UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
TOM SABATANO and DANIEL             :
BARZOLOSKI, each individually and on behalf   :
of all others similarly situated,   :
                     Plaintiffs,   :
                                :
v.   :
                                :
IOVATE HEALTH SCIENCES U.S.A. INC.   :
a/k/a Muscletech,   :
                    Defendant.   :
-------------------------------------------------------------x

**OPINION AND ORDER**

19 CV 8924 (VB)

Briccetti, J.:

        Plaintiffs Tom Sabatano and Daniel Barzoloski bring this putative class action on behalf of themselves and all others similarly situated against defendant Iovate Health Sciences U.S.A. Inc. a/k/a Muscletech ("Iovate"). Plaintiffs bring claims under the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301(1) et seq., the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 et seq., the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq., the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 et seq., and the N.Y. Gen. Bus. Law §§ 349, 350. Plaintiffs also bring claims for breach of warranty, unjust enrichment, and fraud.

        Now pending is defendant's motion to dismiss the amended complaint under Rule 12(b)(6). (Doc. #15).

        For the following reasons, the motion is GRANTED IN PART and DENIED IN PART.

        The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d).

## BACKGROUND

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded allegations in the amended complaint and draws all reasonable inferences in plaintiffs' favor, as summarized below.

Defendant, a Delaware corporation, manufactures, packages, and sells the dietary supplement Platinum 100% BCAA[1] 8:1:1 ("Platinum BCAA").[2]  Plaintiffs allege Platinum BCAA purports to facilitate muscle growth through the consumption of three essential amino acids ("EEAs")— leucine, valine, and isoleucine.  (See Doc. #5 ("Am. Compl.") ¶¶ 1–4).  According to plaintiffs, there exist nine EEAs in total, and building muscle requires all of them, not just leucine, valine, and isoleucine.  (See id. ¶ 7 (alleging muscle "cannot be built without the necessary raw materials, to wit all EAAs")).

Plaintiffs allege that in August 2017, Dr. Robert Wolfe published the article Branch-chained Amino Acids and Muscle Protein Synthesis in Humans:  Myth or Reality?, in which Dr. Wolfe concluded that taking Platinum BCAA "not only fails to increase the rate of muscle protein synthesis in human subjects, but actually reduces the rate of muscle protein synthesis." (Am. Compl. ¶ 16, Ex. A at 5).  Thus, according to plaintiffs, ingesting Platinum BCAA leaves consumers wishing to build muscle "in a worse position than if not taking the product at all." (Id. ¶ 1).

Plaintiff Sabatano alleges that in 2018, he purchased Platinum BCAA for approximately $30 at a GNC store in Yonkers, New York.  Sabatano alleges he read, relied on, and was induced to purchase Platinum BCAAA because of statements on the product's packaging.  Specifically,

---

[1]      BCAA stands for branched-chain amino acids.

[2]      Platinum BCAA is marketed and sold in capsule form.

Sabatano alleges the packaging contains the following misrepresentations:  "Promotes Muscle Protein Synthesis," "ensures that your muscles are primed for musclebuilding," and provides "key building blocks of muscle."  (Am. Compl. ¶ 3; see also id. at ¶ 28).  On September 20, 2019, Sabatano—through his attorney—requested Iovate take corrective action and provided "preliminary notice" respecting the alleged misrepresentations.  (See id. Ex. B).

Plaintiff Barzoloski alleges that in 2018, he too purchased Platinum BCAA for approximately $30, but from a 24 Hour Fitness gym in Sacramento, California.  Like Sabatano, Barzoloski alleges he read, relied on, and was induced to purchase the product because of statements on the packaging that Platinum BCAA:  "Promotes Muscle Protein Synthesis," "ensures that your muscles are primed for musclebuilding," and provides "key building blocks of muscle."  (Am. Compl. ¶ 3; see also id. at ¶ 29).  On July 26, 2019, Barzoloski —through his attorney—requested Iovate take corrective action and provided "preliminary notice" respecting the alleged misrepresentations.  (See id. Ex. C).

Simply, plaintiffs allege Platinum BCAA's marketing contained misrepresentations which led them to believe that consuming the product would facilitate muscle growth.  According to plaintiffs, such misrepresentations induced their purchase of Platinum BCAA.  However, plaintiffs claim that ingesting Platinum BCAA alone—without the other six of nine total EEAs—negatively impacts muscle protein synthesis, and, therefore, ingesting Platinum BCAA had the inverse effect of its intended use.

## DISCUSSION

I.    Standard of Review

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v.

3

Iqbal, 556 U.S. 662, 679 (2009).[3]  First, a plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss.  Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the complaint's allegations must meet a standard of "plausibility."  Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

In considering a motion to dismiss pursuant to Rule 12(b)(6), courts "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."  DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010).

II.    State Statutory Claims

Defendant argues plaintiffs cannot state a plausible claim for deceptive trade practices under New York or California consumer protection statutes because defendant's statements would not mislead a reasonable consumer.

---

[3]      Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

The Court agrees.

A.        New York General Business Law Sections 349, 350

New York General Business Law Section 349 provides: "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful."  N.Y. Gen. Bus. Law § 349.  To establish a prima facie case under Section 349, a plaintiff must demonstrate that "(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result."  Maurizio v. Goldsmith, 230 F.3d 518, 521 (2d Cir. 2000) (citing Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d 20, 25 (1995)). "[D]eceptive acts" are defined as acts that are "likely to mislead a reasonable consumer acting reasonably under the circumstances."  Maurizio v. Goldsmith, 230 F.3d at 522 (citing Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A., 85 N.Y.2d at 26).

New York General Business Law Section 350 renders unlawful "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."  N.Y. Gen. Bus. Law § 350.  To state a plausible Section 350 claim, a plaintiff must allege the act, practice or advertisement was consumer-oriented and misleading in a material respect, and that plaintiff was injured as a result of such conduct.  Medisim Ltd. v. BestMed LLC, 910 F. Supp. 2d 591, 607 (S.D.N.Y. 2012).  "A plaintiff must also demonstrate reliance, which typically means he must point to a specific advertisement or public pronouncement upon which the consumer relied."  Id.

B.        California Consumer Protection Statutes

The UCL prohibits "unfair competition," which is defined as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."  Cal.

Bus. & Prof. Code § 17200.  The statute "is violated where a defendant's act or practice is (1) unlawful, (2) unfair, (3) fraudulent, or (4) in violation of section 17500 (false or misleading advertisements)."  Lozano v. AT&T Wireless Servs., Inc., 504 F.3d 718, 731 (9th Cir. 2007).

In addition, violations of the FAL constitute "unlawful" conduct for the purposes of the UCL.  See Comm. on Children's Television, Inc. v. Gen. Foods Corp., 35 Cal. 3d 197, 210 (1983) ("[a]ny violation of the false advertising law . . .  necessarily violates the unfair competition law"), superseded by statute on another ground, as stated in Californians for Disability Rights v. Mervyn's, LLC, 39 Cal. 4th 223, 227 (2006).  To state a claim under the FAL, "a plaintiff must allege:  (1) statements in the advertising are untrue or misleading, and (2) defendant knew, or by the exercise of reasonable care should have known, that the statements were untrue or misleading."  VP Racing Fuels, Inc. v. Gen. Petrol. Corp., 673 F. Supp. 2d 1073, 1086 (E.D. Cal. 2009).  A claim under the FAL may be based on "advertising which [,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public."  Kasky v. Nike, Inc., 27 Cal. 4th 939, 951 (2002) (alteration in original).

Finally, the CLRA prohibits specified "unfair methods of competition and unfair or deceptive acts or practices" in connection with the sale, or lease, of goods or services to a consumer.  See Cal. Civ. Code, § 1770(a).  Among the practices prohibited by the CLRA is "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have." Cal. Civ. Code § 1770(a)(5).

C.      Reasonable Consumer Standard

"To state a claim for false advertising or deceptive business practices under New York or California law, a plaintiff must plausibly allege that the deceptive conduct was likely to mislead a reasonable consumer acting reasonably under the circumstances."  Mantikas v. Kellogg Co.,

910 F.3d 633, 636 (2d Cir. 2018).  "[These provisions] require an additional finding that a reasonable consumer in like circumstances would consider the misrepresentation material."  Alce v. Wise Foods, Inc., 2018 WL 1737750, at *9 (S.D.N.Y. Mar. 27, 2018) (discussing Sections 349 and 350); Williams v. Gerber Prod. Co., 552 F.3d 934, 938 (9th Cir. 2008) (noting "claims under these California statutes are governed by the 'reasonable consumer' test").

Determining the likelihood that reasonable consumers would be misled entails "[v]iewing each allegedly misleading statement in light of its context on the label and in connection with the marketing of [the product] as a whole."  Ackerman v. Coca-Cola Co., 2010 WL 2925955, at *15 (E.D.N.Y. July 21, 2010).  Although "California courts . . . have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision on [a motion to dismiss]," Williams v. Gerber Prod. Co., 552 F.3d at 938, "[i]t is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer."  Fink v. Time Warner Cable, 714 F.3d 739, 741 (2d Cir. 2013) (per curiam) (citing Freeman v. Time Inc., 68 F.3d 285 (9th Cir. 1995)).  "Indeed, a number of courts have dismissed [California statutory] claims as a matter of law post-Williams, especially where, . . . the claim alleges that a consumer will read a true statement on a package and will then disregard well-known facts of life and assume things about the products other than what the statement actually says."  Red v. Kraft Foods, Inc., 2012 WL 5504011, at *3 (C.D. Cal. Oct. 25, 2012).

D.   Application

The core issue here is whether a reasonable consumer could reasonably believe he would build muscle if he consumed the dietary supplement Platinum BCAA—and only Platinum BCAA.

The Court concludes plaintiffs cannot plausibly plead that the statements on the packaging for Platinum BCAA would mislead a reasonable consumer into thinking that ingesting Platinum BCAA alone would build muscle.

First, and most importantly, plaintiffs' amended complaint includes an image of the Platinum BCAA packaging, which states in large and clearly visible letters at the bottom: "DIETARY SUPPLEMENT."  (Am. Compl. ¶ 23).

The Federal Food, Drug, and Cosmetic Act (the "Act") defines a dietary supplement as:

> (1) [A] product (other than tobacco) intended to supplement the diet that bears or contains one or more of the following dietary ingredients: . . . (D) an amino acid; (E) a dietary substance for use by man to supplement the diet by increasing the total dietary intake; (F) or a concentrate, metabolite, constituent, extract, or combination of any [above listed] ingredient[s].

21 U.S.C. § 321(ff)(1).  Pursuant to the Act, a dietary supplement "is not represented for use as a conventional food or as a sole item of a meal or the diet."  Id. § 321ff(2)(B).

A reasonable consumer would not be misled into believing Platinum BCAA is a conventional food or should be eaten as a sole item in a diet.  Here, the words "DIETAERY SUPPLEMENT" are displayed in large, upper-case font, in a different color, on the front of the Platinum BCAA packaging.  No reasonable consumer, acting reasonably, would be misled into believing Platinum BCAA—a dietary supplement—would supplant one's diet and build muscle on its own.  This is in line with other courts that have similarly dismissed claims in which consumers allege to have "read a true statement on a package" and nevertheless assumed things about the product, disregarding "well-known facts of life."  Red v. Kraft Foods, Inc., 2012 WL 5504011, at *3; see also Mantikas v. Kellogg Co., 910 F.3d at 637–38 (distinguishing such cases).

Second, plaintiffs cannot plausibly allege the statements identified on the Platinum

BCAA packaging were actually misleading.  Plaintiffs point to the following statements and

claim such misrepresentations induced their purchases:  "Promotes Muscle Protein Synthesis;"

"ensures that [his] muscles are primed for musclebuilding;" and provides "key building blocks of

muscle."  (Am. Compl. ¶¶ 28, 29.).   None of these statements suggests that ingesting Platinum

BCAA, absent food or exercise, builds muscle.  Indeed, the statements say the product

"promotes" and "prime[s]" muscles for growth—statements that belie any suggestion that

Platinum BCAA alone is enough.

Accordingly, plaintiffs fail to plead plausible misrepresentation claims under New York

and California statutory law.

III.   Breach of Warranty Claims

A.   Magnuson-Moss Warranty Act Claim

Defendant argues plaintiffs cannot plausibly allege claims for breach of warranty under

the Magnuson-Moss Warranty Act because plaintiffs fail to specify a time period for a specified

level of performance.[4]

The Court agrees.

The Magnuson-Moss Warranty Act ("MMWA") "grants relief to a consumer 'who is

damaged by the failure of a . . . warrantor . . . to comply with any obligation . . . under a written

warranty." Wilbur v. Toyota Motor Sales, U.S.A., Inc., 86 F.3d 23, 26 (2d Cir. 1996) (quoting

15 U.S.C. § 2310(d)(1)). "Written warranty" is defined as:

---

[4]      Defendant also argues plaintiffs' MMWA claim fails as a matter of law because food
labels governed by federal law cannot form the basis of written warranties.  Because the Court
finds the MMWA claim fails for plaintiffs' failure to allege a time period, the Court need not
address defendant's other arguments.

(A) any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time, or

(B) any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking,

which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of such product.

15 U.S.C. § 2301(6).  Indeed, "the MMWA makes a warrantor directly liable to a consumer for breach of a written warranty," and thus "a buyer may obtain a refund of the purchase price from a manufacturer for breach of an express warranty."  Shuldman v. DaimlerChrysler Corp., 1 A.D.3d 343, 345 (2d Dep't 2003).

Here, plaintiffs do not allege they took Platinum BCAA capsules for any specified period of time and then failed to see desired results.  See 15 U.S.C. § 2301(6)(A).  Nor do plaintiffs allege they personally experienced the negative effects of the alleged misrepresentations.  In fact, there is no indication in the amended complaint that plaintiffs did not actually experience the benefits of Platinum BCAA.  Instead, plaintiffs rely on scientific studies, including Dr. Wolfe's, to support their claim that taking Platinum BCAA alone will not build muscle.

Accordingly, plaintiffs have not adequately pleaded a claim for a breach of warranty under the MMWA.

B.    Breach of Express Warranty

Defendant argues plaintiffs' express warranty claims fail because plaintiffs failed to provide timely notice of such claims.

The Court disagrees.

10

The Uniform Commercial Code's express warranty provision, as adopted by both California and New York, provides that "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise."  Cal. Com. Code § 2313(a); N.Y. U.C.C. Law § 2-313(a).  A plaintiff complaining of breach of express warranty must "set forth the terms of the warranty upon which he relied."  Parker v. Raymond Corp., 87 A.D.3d 1115, 1117 (2d Dep't 2011); see also Sanders v. Apple Inc., 672 F. Supp. 2d 978, 986–87 (N.D. Cal. 2009) ("To plead an action for breach of express warranty under California law, a plaintiff must allege:  (1) the exact terms of the warranty; (2) reasonable reliance thereon; and (3) a breach of warranty which proximately caused plaintiff's injury.").

Under California law, a plaintiff also must plead that he provided the defendant with pre-suit notice of the breach.  See Cal. Com. Code § 2607.  The same is required under New York law.  See Tomasino v. Estee Lauder Cos., 44 F. Supp. 3d 251, 260 (E.D.N.Y. 2014) ("To assert a breach of warranty claim under New York law, 'the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of [the] breach or be barred from any remedy[.]'") (citing N.Y. U.C.C. § 2–607(3)(a)) (second alteration in original).

The Court is skeptical that there was a breach of express warranty and that plaintiffs' notice was timely.  Nevertheless, the Court concludes that neither the issue of the alleged breach, nor whether notice was timely, is appropriate for resolution at the motion to dismiss stage.  Here, plaintiffs allege defendant's statements that Platinum BCAA—"Promotes Muscle Protein Synthesis," "ensures that [his] muscles are primed for musclebuilding," and provides "key building blocks of muscle"—induced each to purchase Platinum BCAA and the product did not work as warranted.  (Am. Compl. ¶¶ 28, 29).

11

Although it is a close call, plaintiffs plausibly plead claims for breach of express warranty because they allege they each purchased Platinum BCAA for the purpose of building muscle; they somehow learned—although it is not alleged how—that they needed to consume other EAAs to build said muscle; and they then, through their lawyer, requested defendant "cure these defects" with the product.  (Am. Compl. Exs. B at 2, C at 2).  Specifically, plaintiffs requested defendant:  "(1) cease and desist from further sales of mislabeled Platinum 100% BCAA 8:1:1; (2) issue an immediate recall of mislabeled Platinum 100% BCAA 8:1:1 products; and (3) make full restitution to all purchasers of your Platinum 100% BCAA 8:1:1 products" (id. at Ex. B at 2; Ex. C at 2).  Although plaintiffs do not explicitly allege defendant failed to take the requested curative action, the amended complaint suggests no such action occurred.

Moreover, although plaintiffs fail to explicitly allege they used Platinum BCAA, and thus "it is impossible to know precisely when [they each] discovered the alleged breach," Tomasino v. Estee Lauder Cos., 44 F. Supp. 3d at 261, plaintiffs do allege they provided timely notice to defendant by way of letters dated July 26 and September 20, 2019.  (See Am. Compl. ¶¶ 70–71).

Accordingly, plaintiffs have plausibly alleged claims for breach of express warranty.

C.      Breach of Implied Warranty of Merchantability

Defendant argues plaintiffs' breach of implied warranty claims must be dismissed because plaintiffs were not in privity with defendant.

The Court agrees with respect to plaintiff Sabatano but disagrees with respect to plaintiff Barzoloski.

"New York courts continue to require privity between a plaintiff and defendant with respect to claims for breach of the implied warranties of merchantability and fitness for a particular purpose where the only loss alleged is economic."  Catalano v. BMW of N. Am., LLC,

167 F. Supp. 3d 540, 556 (S.D.N.Y. 2016) (citing Arthur Jaffee Assocs. v. Bilsco Auto Serv.,

Inc., 58 N.Y.2d 993, 995 (1983)).  However, "privity is not required under California law for . . .

breach of [implied] warranty claims where, as here, 'the plaintiff relies on written labels or

advertisements of a manufacturer.'"  Weisblum v. Prophase Labs, Inc., 88 F. Supp. 3d 283, 295–

96 (S.D.N.Y. 2015) (quoting Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1023 (9th Cir.

2008)).

Plaintiffs concede to defendant's lack of privity argument with respect to Sabatano's

claim.  (See Doc. #21 ("Pl. Mem.") at 20).  However, because Barzoloski, who purchased

Platinum BCAA in California, alleges he relied on the written labels of Platinum BCAA's

packaging, lack of privity does not bar his claim.

Accordingly, Sabatano's breach of implied warranty claim must be dismissed, but

Barzoloski's breach of implied warranty claim shall proceed.

IV.   Fraud

Defendant argues plaintiffs fail to allege with particularity a fraud claim pursuant to

Federal Rule of Civil Procedure 9(b).

The Court agrees.

A claim for fraud under New York law requires a showing of "misrepresentation or a

material omission of fact which was false and known to be false by defendant, made for the

purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the

misrepresentation or material omission, and injury."  Lama Holding Co. v. Smith Barney, Inc.,

88 N.Y.2d 413, 421 (1996).  Under California law, the elements of fraud are:  "(1) the defendant

made a false representation; (2) the defendant knew the representation was false at the time it

was made; (3) in making the representation, the defendant intended to deceive the plaintiff; (4)

the plaintiff justifiably relied on the representation; and (5) the plaintiff suffered resulting damages." Utts v. Bristol-Myers Squibb Co., 226 F. Supp. 3d 166, 188 (S.D.N.Y. 2016) (citing Lazar v. Superior Court, 12 Cal. 4th 631, 638 (1996)).

In addition, Rule 9(b) requires that "[i]n alleging fraud . . . a party must state with particularity the circumstances constituting fraud."  "[T]o comply with Rule 9(b), the complaint must:  (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006).  And "[t]o meet the requirements of Rule 9(b) a plaintiff must show the manner in which he was damaged by the implementation of a deceptive or manipulative practice or by a misrepresentation or omission."  Moran v. Kidder Peabody & Co., 609 F. Supp. 661, 665 (S.D.N.Y. 1985).

Here, plaintiffs have not plausibly pleaded the alleged misrepresentations were fraudulent and that plaintiffs were damaged by the deception.  First, plaintiffs cannot plausibly allege the statements were misleading or false because, as discussed above, plaintiffs' purported reliance on the statements that Platinum BCAA alone would build muscle was not justified in light of defendant's statements on the packaging.  The amended complaint does not contain allegations—nor could it—that Platinum BCAA packaging instructed consumers to rely solely on the product to build muscle.  Thus, any claims by plaintiffs that they believed, based on product packaging, that they could consume Platinum BCAA, and nothing else, to build muscle, are not plausible.  Because plaintiffs have failed to plead plausible claims for misrepresentation, this precludes any claim for fraud under Rule 9(b), which places an even higher burden on plaintiffs respecting claims sounding in misrepresentation.

Accordingly, plaintiffs' fraud claim must be dismissed.

V.     Unjust Enrichment

Defendant argues plaintiffs cannot, as a matter of law, plead a claim for unjust enrichment because such claim is duplicative of plaintiffs' other claims.

The Court agrees.

"To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." In re Mid-Island Hosp., Inc., 276 F.3d 123, 129 (2d Cir. 2002). Unjust enrichment is available as a cause of action "only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." Goldemberg v. Johnson & Johnson Consumer Cos., 8 F. Supp. 3d 467, 483 (S.D.N.Y. 2014) (citing Corsello v. Verizon N.Y., Inc., 18 N.Y.3d 777, 790 (2012)).  This claim is "not available where it simply duplicates, or replaces, a conventional contract or tort claim." Id. (citing Corsello v. Verizon N.Y., Inc., 18 N.Y.3d at 790).

Here, plaintiffs' unjust enrichment claim is duplicative of plaintiffs' other claims for misrepresentation, rooted in statutory, contract, and tort law.  Plaintiffs allege that to sell its product, defendant committed actionable wrongs through deceptive, fraudulent, and misleading labeling.  The factual allegations plaintiffs use to support their unjust enrichment claim— namely:  "Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs['] . . . purchases of Platinum BCAA.  Retention of those monies under these circumstances is unjust and inequitable because Defendant's sale of Platinum BCAA resulted in purchasers being denied the full benefit of their purchase" (Am. Compl. ¶ 123)—are the same factual allegations used to support plaintiffs' statutory, contract, and tort law claims.

Plaintiffs' argument that its unjust enrichment claim is pleaded in the alternative is of no moment.  And the cases plaintiffs cite on this matter are inapposite.  For example, plaintiffs cite Pramer, S.C.A. v. Abaplus Int'l Corp., 76 A.D.3d 89, 100 (1st Dep't 2010) for the proposition that "a claim for unjust enrichment is not duplicative of a breach of contract claim where the plaintiff alleges that the contracts were induced by fraud."  However, in that case, the court noted "the equitable remedy of unjust enrichment will not be precluded in the event it is determined that the contracts are voided as having been induced by fraud."  Id.  But here, as discussed above, plaintiffs have not plausibly alleged either a fraudulent scheme or statutory misrepresentation claims.  Yet even still, the factual allegations which undergird plaintiffs' claim for unjust enrichment remain the same as those which support plaintiffs' other claims.

Accordingly, the Court finds plaintiffs' unjust enrichment claim is duplicative of plaintiffs' other claims and therefore, must be dismissed.

VI.     Injunctive Relief

Defendant argues plaintiffs lack standing to sue for injunctive relief.

The Court agrees.

"The doctrine of standing asks whether a litigant is entitled to have a federal court resolve his grievance."  Hillside Metro Assocs., LLC v. JPMorgan Chase Bank, Nat'l Ass'n, 747 F.3d 44, 48 (2d Cir. 2014).  To establish standing in federal court, a litigant must demonstrate, among other things, he or she has suffered an injury.  Deshawn E. by Charlotte E. v. Safir, 156 F.3d 340, 344 (2d Cir. 1998). "A plaintiff seeking injunctive or declaratory relief cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he or she will be injured in the future."  Peck v. Baldwinsville Cent. Sch. Dist., 351 F. App'x 477, 479 (2d Cir. 2009) (summary order) (quoting Deshawn E. by Charlotte E. v. Safir, 156 F.3d at 344).  Thus, a plaintiff who

concedes he is no longer likely to purchase a product because he knows of a defendant's alleged deception and false advertising does not have standing to enjoin the defendant's sales practices. See Kommer v. Bayer Consumer Health, 710 F. App'x 43, 44 (2d Cir. 2018) (summary order).

Here, plaintiffs allege they would not have purchased the Platinum BCAA had they "known the true nature of the Product."  (See Am. Compl. ¶¶ 103; see also id. ¶¶ 28, 29, 47, 54, 64, 74, 75).  That the Ninth Circuit held "we are not persuaded that injunctive relief is never available for a consumer who learns after purchasing a product that the label is false," is of no moment.  Davidson v. Kimberly-Clark Corp., 889 F.3d 956, 980 (9th Cir. 2018), cert. denied 139 S. Ct. 640 (2008) (discussing injunctive relief in the context of California statutory claims). Here, plaintiffs have not plausibly alleged any California statutory claims that were at issue in Davidson.  Moreover, plaintiffs do not allege they intend to purchase Platinum BCAA in the future.  Therefore, plaintiffs cannot show a likelihood of future injury.

And as an additional matter, plaintiffs' only surviving claims are for breach of warranty, and such claims are adequately addressed with damages.

Accordingly, plaintiffs' claims for injunctive relief must be dismissed.

VII.   Leave to Amend

Defendant argues plaintiffs should not be given leave to again amend their pleading.

The Court agrees.

Rule 15(a)(2) of the Federal Rules of Civil Procedure instructs that courts "should freely give leave" to amend a complaint "when justice so requires."  However, leave to amend "may properly be denied for:  'undue delay, . . . [or] futility of amendment.'"  Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)).

Here, the Court finds that repleading would be futile, because the problems with plaintiffs' amended complaint are substantive and will not be cured by better pleading.  See Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 797 F.3d 160, 190 (2d Cir. 2015) ("leav[ing] unaltered the grounds on which denial of leave to amend has long been held proper, such as undue delay, bad faith, dilatory motive, and futility").  Moreover, plaintiffs declined a prior opportunity to amend the complaint, even after reviewing the instant motion to dismiss and accompanying memorandum of law.  (See Doc. #18) (declining to amend the complaint).  Further, granting plaintiffs leave to amend would likely result in a renewed motion to dismiss, causing further delay to the progress of this case.  Such further delay would be unwarranted and contrary to the interests of justice.  See Fed. R. Civ. P. 1.

Accordingly, plaintiffs' request for leave to amend is denied.

**CONCLUSION**

The motion to dismiss is GRANTED IN PART and DENIED IN PART.

Plaintiff Sabatano's claim for breach of express warranty shall proceed and plaintiff

Barzoloski's claims for breach of express warranty and breach of implied warranty shall proceed.

All other claims are dismissed.

By July 6, 2020, Iovate shall file an answer to the amended complaint.

The Clerk is instructed to terminate the motion.  (Doc. #15).

Dated: June 22, 2020
       White Plains, NY

                              SO ORDERED:


                              _____
                              Vincent L. Briccetti
                              United States District Judge